UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BYRON CHAPMAN,<br><br>   Plaintiff,<br><br> v.<br><br>SCHELLVILLE GRILL, et al.,<br><br>   Defendants. | Case No.16-cv-07324-EDL<br><br>**REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT** |

Before the Court is Plaintiff Byron Chapman's motion for default judgment against Mr. Matthew J. Nagan and Schellville Grill (collectively "Defendants"). Defendants have not opposed the motion. Plaintiff consented to magistrate judge jurisdiction. Neither Defendant has appeared, responded to the complaint or motion for default judgment, or otherwise participated in the action. For the following reasons, the Court issues a report and recommendation that Plaintiff's motion for entry of default judgment be GRANTED IN PART and DENIED IN PART and reassigns this case to a district judge.

**I. ALLEGATIONS IN THE COMPLAINT**

Plaintiff is a person with physical disabilities. Compl. ¶ 6. Plaintiff has a spinal cord injury, and relies primarily on a wheelchair to travel in public. Id. ¶¶ 6, 8.

Schellville Grill is a restaurant in Sonoma, California. Id. ¶ 9. Defendants own and operate Schellville Grill. Id. ¶ 11. Defendant Mr. Matthew J. Nagan owns the real property, both land and building, for the restaurant. Id. ¶ 10.

Plaintiff went to Schellville Grill by himself on July 31, 2016. Id. ¶ 17. He went back with his wife on December 5, 2016. Id. On both occasions, Plaintiff encountered architectural

barriers in the parking lot and route to the entry door, including a lack of a parking stall designated for the disabled, an uneven parking lot surface with loose gravel, and an approximately one inch height difference between the asphalt parking surface and cement ramp leading to the entry door. Id. ¶ 18.

On his July 31, 2016 visit, Plaintiff discovered that furniture and a large can reduced the turning space in the restroom, and there was no side grab bar, among other problems. Id. ¶ 19. Plaintiff could not use the restroom as a result. Id. Furthermore, Plaintiff could not turn around in the restroom, and had to back up to the door and wait for another patron to open the door to exit. Id.

On July 31, 2016, Plaintiff wrote the following note to be given to the manager:

> July 31, 2016 (Sunday)
> I was in your place today, the food was fantastic especially the ribs but I had problems with some things that need to be taken care of. The parking, ramp entrance, high threshold and the Men's restroom.
> It makes it very hard for me as a wheelchair user.
> Please write me back in a day or two and tell me what will be done.
> You may also want to share this with the landlord if you are not the property owner.
> Byron Chapman
> 2220 Mt. Errigal Ln.
> Lincoln, CA 95648
> Respectfully,

Id. ¶ 20, Ex. A. Plaintiff's food server gave the note to Defendant Matthew J. Nagan, and Plaintiff discussed access issues with Mr. Nagan. Id. ¶ 20.

Plaintiff returned to Schellville Grill on December 5, 2016, and encountered the same architectural barriers, with no apparent remedial work. Id. ¶¶ 21, 23. In addition, Plaintiff could not open the patio door because there was no side strike clearance. Id. ¶ 24. Plaintiff contends that it was "readily achievable" for Defendants to remove some or all of the architectural barriers at the restaurant. Id. ¶ 30. Plaintiff "would have or will have" returned to the restaurant on or about the month of April, 2017, and thereafter, but "was or will be" deterred. Id. ¶ 25.

Plaintiff brings four claims against Defendants: (1) denial of full and equal access by a public accommodation in violation of the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101, et seq.; (2) denial of full and equal access by a public accommodation in violation of the California Disabled Persons Act ("DPA"), California Civil Code §§ 54, 54.1, and 54.3, et seq.; (3) denial of accessible sanitary facilities in violation of California Health & Safety Code § 19955, et seq.; and (4) denial of full and equal accommodations, advantages, facilities, privileges and/or services in violation of the Unruh Civil Rights Act, California Civil Code § 51, et seq. Id. ¶¶ 53-89. Plaintiff seeks injunctive relief to make Schellville Grill readily accessible to individuals with disabilities, statutory damages, attorneys' fees, general damages, treble damages, costs, and interest. Id. at 29-31.

## II. PROCEDURAL HISTORY

Plaintiff filed his complaint on December 23, 2016. Dkt. No. 1. Plaintiff attempted to serve Defendants by means of substituted service on December 30, 2016. Dkt. No. 8. Specifically, the process server submitted an affidavit of reasonable diligence showing that he had visited the business twice when it was closed, and then left the summons and complaint with an employee at Schellville Grill, informing her of the general nature of the papers. Id. In addition, the process server mailed a copy of the complaint, summons, and case initiating documents to Defendants on January 5, 2017. Id. Defendants did not answer. Plaintiff's attorney states that he sent a follow-up letter to Defendants, dated February 15, 2017. Dkt. No. 12-8.

On February 23, 2017, Plaintiff requested entry of default against Defendants, and Plaintiff mailed the request and accompanying documents to Defendants. Dkt. Nos. 9 & 10. On February 28, 2017, the Clerk entered default against Defendants. Dkt. No. 11.

On April 11, 2017, Plaintiff moved for default judgment by the Court. Dkt. No. 12. Plaintiff contends that he is disabled, Defendants' business is a place of public accommodation, and the business presented physical barriers precluding Plaintiff's full and equal access to the facility; thus, Defendants' violated the ADA. Dkt. No. 12-1 at 5. Plaintiff argues that a violation of the ADA constitutes a violation of the Unruh Civil Rights Act. Id. at 7. Under California Civil

Code § 52(a), a party that discriminates against a plaintiff in violation of the Unruh Civil Rights Act shall be liable for no less than $4,000.00 for each time that plaintiff suffered discrimination. Id. at 7-8. Plaintiff seeks statutory damages in the amount of $12,000. Id. at 8. According to Plaintiff, Defendant Schellville Grill is a business entity, and Defendant Matthew J. Nagan is not an infant, incompetent person, or person in military service. Dkt. No. 12-3.

Plaintiff also seeks attorneys' fees, litigation costs, and expert fees in the amount of $15,450 in his motion. Dkt. No. 12-3. Plaintiff's attorneys, an experienced practitioner and his associate, seek hourly fees of $625 and $300 per hour respectively. Id. Plaintiff's attorney itemized costs, and rounded to the nearest $50, for total costs of $1300. Id. Plaintiff calculated $14,150 for attorneys' fees when rounding to the nearest $50. Plaintiff produced entries showing this matter occupied 17 hours of the principal's time and 11.7 hours of the associate's time. Dkt. No. 12-9.

On May 16, 2017, Plaintiff filed a reply in which he seeks an additional $1,350 in attorneys' fees and $200 in costs due to preparation for the hearing on this motion. Dkt. No. 14. Thus, Plaintiff currently seeks $17,000 in attorneys' fees and costs. Id.

**III. DISCUSSION**

After entry of default by the clerk, a court may grant default judgment. See Fed. R. Civ. P. 55. The district court's decision whether to enter a default judgment is discretionary. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). Upon default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true. Televideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Financial Grp., 559 F.2d 557, 560 (9th Cir. 1977)).

    **a.**    **Requirements Regarding Identity of Defendants**

A court may not enter a default judgment against a minor or an incompetent person unless his or her representative has appeared. See Fed. R. Civ. P. 55(b)(2). A plaintiff seeking an entry of default judgment must comply with additional requirements if the defendant has not appeared

4

in the action and is in military service. 50 U.S.C.A. § 3931(a), (b).

Defendant Schellville Grill, as an artificial entity, is not a minor, an incompetent person, or a person in military service. Defendant Nagan is not a minor, an incompetent person, or a person in military service. Dkt. No. 12-3, ¶¶ 19-20.

### b. Jurisdiction and Service of Process

As a preliminary matter, a court should determine whether it has subject matter jurisdiction over the action and personal jurisdiction over the defendant to enter default judgment. See Tuli v. Republic of Iraq, 172 F.3d 707, 712 (9th Cir. 1999). In addition, the court should assess the adequacy of the service of process on the defendant. Disney Enterprises, Inc. v. Vuong Tran, No. 12-5030 SC, 2013 WL 1832563, at *1 (N.D. Cal. May 1, 2013); PepsiCo, Inc. v. California Sec. Cans, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002).

The Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1367 because Plaintiff alleged that Defendants violated the ADA, among other claims arising out of the same occurrence. The Court also has personal jurisdiction over Defendants because they do business in Sonoma, California.

Service of the complaint and summons on Defendant Mr. Nagan was adequate. See Fed. R. Civ. Pro. 4(e)(1); Cal. Code Civ. Pro. § 415.20(b).[1] Specifically, the process server left a copy of the summons and complaint at what is presumably Mr. Nagan's usual place of business, Schellville Grill, with an employee at least 18 years of age, who was informed of the contents, and then mailed a copy of the summons and of the complaint by first-class mail to the person to be served at the place where a copy of the summons and complaint were left. Dkt. No. 8.

---

[1] "(b) If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served, as specified in Section 416.60, 416.70, 416.80, or 416.90, a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address other than a United States Postal Service post office box, in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box, at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left." Cal. Code Civ. Pro. § 415.20(b).

5

Service of the complaint and summons on Defendant Schellville Grill was not adequate. Plaintiff contends that Defendant Schellville Grill is an artificial entity, but does not state or show precisely what kind of entity it is. California sets forth different methods for service of summons depending upon the nature of the recipient. See Cal. Code Civ. Pro. §§ 416.10, 416.30, 416.40. If the relevant designated agent or other person who should receive service of process did not have its office or usual mailing address at the restaurant itself, then service there was not proper with respect to Schellville Grill. See Cal. Code of Civ. Pro. § 415.20(a). Accordingly, the Court cannot determine adequacy of service upon Defendant Schellville Grill without more information about the entity. Plaintiff's attorney did not attend the scheduled hearing on Plaintiff's motion for entry of default judgment, and so did not clarify or resolve this issue. Thus, the Court recommends denial of the motion for entry of default judgment with respect to Defendant Schellville Grill.

### c. **Eitel Factors**

Entry of default judgment requires the consideration of several factors, including: (1) possibility of prejudice to the plaintiff; (2) merits of the plaintiff's substantive claim; (3) sufficiency of the complaint; (4) sum of money at stake in the action; (5) possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. See Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

#### i. **Prejudice Against Plaintiff**

The first Eitel factor addresses whether Plaintiff will suffer prejudice if the Court does not grant the default judgment. Here, Plaintiff will be without other recourse for recovery if the Court does not grant the motion for entry of default judgment. This factor weighs in favor of default judgment.

#### ii. **Substantive Merits of the Case**

The second and third Eitel factors pertain to the merits of Plaintiff's claims and the

sufficiency of Plaintiff's complaint. Title III of the Americans with Disabilities Act prohibits discrimination against persons with disabilities in places of public accommodation. See 42 U.S.C. § 12182(a). To state a claim for disability discrimination under Title III, a plaintiff must allege that: (1) he is disabled under the Act; (2) he was either excluded from or denied the benefits of services, programs, or activities, or was otherwise discriminated against by the entity providing the services; and, (3) such denial of benefits or discrimination was on account of his disability. See Zukle v. Regents of the Univ. of Cal., 166 F.3d 1041, 1045 (9th Cir. 1999). There is individual liability under Title III of the ADA for individuals who own, lease or operate a place of public accommodation. Lentini v. Cal. Ctr. for the Arts, 370 F.3d 837, 849-51 (9th Cir. 2004). Under Title III of the ADA, discrimination specifically includes "failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv).

Here, Plaintiff has stated claims for denial of full and equal access to a place of public accommodation under the ADA and California law and denial of access to sanitary facilities under California law. Plaintiff alleges that he is a person with a disability and that he uses a wheelchair for mobility. He alleges that he was discriminated against at the Schellville Grill restaurant based on the denial of full access to parking, the entrance, the unisex restroom, and certain fixtures in the restroom on the sole basis that he is a disabled person who requires a wheelchair for movement. Plaintiff alleges Defendants own and operate Schellville Grill. Because a violation of the ADA is a violation of the Unruh Act, a plaintiff need not "allege anything further in order to state a claim under the Unruh Act." Nat'l Fed'n of the Blind v. Target Corp., 452 F. Supp. 2d 946, 957 (N.D. Cal. 2006) (citing Lentini v. California Ctr. for the Arts, 370 F.3d 837, 847 (9th Cir. 2004)); see also Cal. Civil Code § 51(f) ("A violation of the right of any individual under the Federal Americans with Disabilities Act of 1990 . . . shall also constitute a violation of [the California Unruh Act]."). Just as a violation of the ADA is a violation of the Unruh Act, a violation of the ADA is a violation of the DPA (California Disabled Persons Act). See Cal. Civil Code § 54.1(d); Nat'l Fed'n of the Blind, 452 F.Supp.2d at 958. Thus, the second and third Eitel factors weigh in favor of entry of default judgment.

### iii. Amount of Money at Stake

The fourth Eitel factor addresses the sum of money at stake in the action. 782 F.2d at 1471-72. District courts consider "the amount of money at stake in relation to the seriousness of Defendant's conduct." HICA Educ. Loan Corp. v. Warne, 2012 WL 1156402, at *3 (N.D. Cal. April 6, 2012) (Koh, J.); PepsiCo, Inc., 238 F. Supp. 2d at 1176. "The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." HICA Educ. Loan Corp., 2012 WL 1156402, at *3 (quoting Truong Giang Corp. v. Twinstar Tea Corp., 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007)).

Plaintiff requests a total judgment of $29,000, consisting of $12,000 in damages and $17,000 in attorneys' fees and costs. Dkt. No. 14. As addressed below, the record supports entry of default judgment in the amount of $21,318. Plaintiff points to the note that he gave to Mr. Nagan on July 31, 2016 and the long conversation with him regarding architectural barriers on that date as evidence of actual notice to Defendants and an opportunity to cure. Dkt. No. 12-1 at 9. Defendants, however, did nothing. A total judgment of $21,318 is not unduly large in light of Defendants' non-compliance with ADA access requirements. Thus, this factor weighs in favor of entry of default judgment.

### iv. Likelihood of Dispute over Material Facts

The fifth Eitel factor involves the likelihood of a dispute regarding the material facts. Because Plaintiff's factual allegations are presumed true, and Defendants have not answered the complaint or opposed the motion, no factual disputes exist that would prevent the entry of default judgment. See Vogel, 992 F. Supp. 2d at 1013. Accordingly, this factor weighs in favor of the entry of default judgment.

### v. Excusable Neglect

The sixth Eitel factor considers whether the defendant's default resulted from excusable neglect. Eitel, 782 F.2d at 1472. "Where a defendant was properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion, this factor favors entry of default judgment." Pearson v. Nationstar Mortgage, LLC, 2016 WL 5496268, at *6 (C.D.

Cal. Sept. 26, 2016) (internal quotation marks and brackets omitted). Similarly, excusable neglect is unlikely when a plaintiff makes numerous attempts to contact the defendant to resolve the matter. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Plaintiff properly served Defendant Nagan with the complaint, and the application for entry of default. In addition, Plaintiff's counsel and Plaintiff himself wrote letters to Defendants to resolve the matter. Plaintiff did not show that he properly served Defendant Schellville Grill. Thus, Defendant Nagan's default likely did not result from excusable neglect. This factor weighs in favor of entry of default judgment with respect to Defendant Nagan.

### vi. Policy Favoring Decision on the Merits

The strong policy underlying the Federal Rules of Civil Procedure favors decisions on the merits and weighs against default judgment. See Eitel, 782 F.2d at 1471–72 (9th Cir. 1986).

Accordingly, only one of the Eitel factors weighs against entry of default judgment, while the remaining five factors weigh in favor of entry of default judgment with respect to Defendant Nagan.

## IV. RELIEF

Plaintiff's motion for default judgment by the Court seeks $12,000 in statutory damages, and $17,000 in fees and costs for a total of $29,000. Plaintiff also requests injunctive relief.

### A. Statutory Damages

Section 52(a) of the California Civil Code provides for actual and statutory damages, plus attorney's fees, for violations of Section 51. See Cal. Civ. Code § 52(a). A plaintiff may recover "actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6." Id. To recover minimum statutory damages, a plaintiff need only show denial of equal access; proof of actual damages is not required. See Botosan v. McNally Realty, 216 F.3d 827, 835 (9th Cir.

9

2000). Further, a plaintiff proceeding under the Unruh Act "may obtain statutory damages on proof of an ADA access violation without the need to demonstrate additionally that the discrimination was intentional." Munson v. Del Taco, 46 Cal.4th 661, 670 (2009).

The Unruh Civil Rights Act was amended by the DPA in January 2009. The DPA applies to construction related accessibility claims. According to that law,

> (a) Statutory damages under either subdivision (a) of Section 52 or subdivision (a) of Section 54.3 may be recovered in a construction-related accessibility claim against a place of public accommodation only if a violation or violations of one or more construction-related accessibility standards denied the plaintiff full and equal access to the place of public accommodation on a particular occasion.
> (b) A plaintiff is denied full and equal access only if the plaintiff personally encountered the violation on a particular occasion, or the plaintiff was deterred from accessing a place of public accommodation on a particular occasion.
> (c) A violation personally encountered by a plaintiff may be sufficient to cause a denial of full and equal access if the plaintiff experienced difficulty, discomfort, or embarrassment because of the violation.
> (d) A plaintiff demonstrates that he or she was deterred from accessing a place of public accommodation on a particular occasion only if both of the following apply:
> (1) The plaintiff had actual knowledge of a violation or violations that prevented or reasonably dissuaded the plaintiff from accessing a place of public accommodation that the plaintiff intended to use on a particular occasion.
> (2) The violation or violations would have actually denied the plaintiff full and equal access if the plaintiff had accessed the place of public accommodation on that particular occasion.

Cal. Civ. Code § 55.56.

In connection with this incident of discrimination, Plaintiff seeks statutory damages of $12,000.00, but does not explicitly set forth the reason the amount should reflect three times the statutory damages. Presumably, he seeks statutory damages for each occasion of denial of full access, and for the subsequent deterrence from returning. Plaintiff alleges that on July 31, 2016 and December 5, 2016, he was denied full and equal access to Schellville Grill restaurant because of several barriers relating to the parking lot and restrooms. He alleges that he suffered humiliation, difficulty and discomfort. Even though he filed his complaint on December 23, 2016, he contends that he "will have been" deterred from returning on or around April, 2017 and thereafter.

1    The Court recommends the entry default judgment in the amount of $8,000 for the two

2    occasions on which Plaintiff was denied full access to Schellville Grill. His contention that he

3    "will have been deterred" in April, 2017 when he filed his complaint four months earlier does not

4    rise to the level of deterrence on a particular occasion as required under California Civil Code

5    section 55.56(d)(1).

### B. Attorney's Fees & Costs

Plaintiff also seeks attorney's fees and costs. See 42 U.S.C. § 12205 ("In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual."); Cal. Civil Code § 52(a) (providing for attorney's fees award for violations of the Unruh Act); Cal. Civil Code § 54.3 (providing for attorney's fees award for violations of the Disabled Persons Act).

In the motion, Mr. Frankovich contends that he spent 17 hours, and claims an hourly rate of $625 per hour and that his associate Ms. Amanda Lockhart spent 11.7 hours at a rate of $300 per hour. Plaintiff provided contemporaneous billing records of the number of hours worked. Dkt. Nos. 12-9. Costs incurred in connection with this matter include a filing fee of $400, service of process cost of $158, expert fees of $750, a cost associated with "ownership information" of $10, and postage of $2.47. Dkt. No. 12-3. In its reply, Plaintiff seeks an additional $200 in costs for "the courtesy copies of the moving and reply papers, as well as mailings to Defendants" and an additional $1,350 in attorneys' fees in preparation for the hearing on the instant motion. Dkt. No. 14-1.

#### i. Attorneys' Fees

"A court awarding attorney fees must look to the prevailing market rates in the relevant community." Bell v. Clackamas Cnty., 341 F.3d 858, 868 (9th Cir. 2003) (citing Blum v. Stenson, 465 U.S. 886, 895 (1984)). The fee applicant must produce satisfactory evidence "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 895,

11

n. 11.

Mr. Frankovich submitted a declaration outlining the increases in his hourly rate from $375 per hour in 2002 to $475 per hour in 2008 to $500 per hour in 2014. Dkt. No. 12-3. He noted that in June 2016, he raised his hourly rate to $625 per hour "in recognition of [his] 40th year of practice." Id. Ms. Lockhart has practiced law since June 2013, focusing solely on ADA law. Id. In support of his rates, Mr. Frankovich points to an article in *California Lawyer* from August 1997 setting forth the rates of some of California's star lawyers. Dkt. No. 12-10. Mr. Frankovich also points a set of cases which have recognized the reasonableness of his former billing rate of $500 per hour. See, e.g., Asencio v. ADRU Corp., 2014 WL 204212 (N.D. Cal. January 6, 2014) (Alsup, J.). Mr. Frankovich also points to his trial experience, media sources that have featured him, and presentations that he has given to support his billing rate. Dkt. No. 12-3.

Mr. Frankovich has not carried his burden of showing that $625 per hour is reasonable in light of rates for similar services offered by lawyers of reasonably comparable skill, experience, and reputation. In recent ADA access cases in this district, courts have approved rates of $350 and $425 per hour. See Johnson v. Altamira Corp., 2017 WL 1383469 (N.D. Cal. March 27, 2017) (Cousins, J.) (approving rate of $425 per hour); Castillo-Antonio v. Iqbal, 2017 WL 1113300 (N.D. Cal. March 24, 2017) (Westmore, J.) (reducing hourly rate sought from $400 to $350). Mr. Frankovich has been awarded $500 per hour. Asencio v. ADRU Corp., 2014 WL 204212 (N.D. Cal. January 6, 2014); Heatherly, et al. v. GD Liquor & Food, et al., 2015 WL 4967255 (N.D. Cal. August 20, 2015). Neither Mr. Frankovich nor Ms. Lockhart appeared for the hearing on the motion for default judgment. Ms. Lockhart's hourly rate of $300 per hour is reasonable. The contemporaneous billing records support the reasonableness of the number of hours worked. The Court will not award fees for time spent allegedly preparing for the hearing on the motion, however, because neither Mr. Frankovich nor Ms. Lockhart appeared for the hearing. Thus, the Court recommends an award of attorneys' fees to Plaintiff in the amount of $12,010 (($500 per hour x 17.0 hours) + ($300 per hour x 11.7 hours)).

### ii. Costs

A court may, in its discretion, allow the prevailing party to recover costs and litigation

expenses under the ADA. See 42 U.S.C. § 12205.[2] The Court recommends disallowing the rather high $200 for chamber's copies of moving and reply papers. Furthermore, it is unclear what the cost associated with "ownership information" is. Apart from that, however, the Court recommends awarding the costs claimed by Plaintiff, which would be in the amount of $1,308 (a filing fee of $400 + service of process cost of $158 + expert fees of $750).

In total, the Court recommends awarding $13,318 in attorneys' fees and costs ($12,010 + $1,308).

### C. Injunctive Relief

To be entitled to injunctive relief under 42 U.S.C. § 12188(a)(2), Plaintiff must show Defendant has violated the ADA Accessibility Guidelines. "In the case of violations [of the accessibility provisions] of this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . ." 2 U.S.C. § 12188(a)(2). See Moeller v. Taco Bell, 816 F. Supp. 2d 831, 859 (N.D. Cal. 2011); Vogel, 992 F. Supp. 2d at 1015. Furthermore, "[t]he standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief." Moeller, 816 F. Supp. 2d at 859 (quoting Antoninetti v. Chipotle Mexican Grill, Inc., 643 F.3d 1165, 1175–76 (9th Cir. 2010)). Injunctive relief is appropriate where architectural barriers at the defendant's establishment violate the ADA and the removal of the barriers is readily achievable. See, e.g., Moreno v. La Curacao, 463 Fed. Appx. 669, 670 (9th Cir. 2011) (Unpub. Disp.). Thus, the Court recommends that Defendants be enjoined to remove all architectural barriers identified in Plaintiff's complaint.

### V. CONCLUSION

Accordingly, the Court recommends that Plaintiff's motion for entry of default judgment be GRANTED in the amount of $21,318, consisting of $8,000 for statutory damages and $13,318

---

[2] "In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual."

13

for fees and costs, with respect to Defendant Nagan and DENIED with respect to Defendant Schellville Grill.  Furthermore, the Court recommends enjoining Defendant Nagan to remove all architectural barriers identified in Plaintiff's complaint.

Any party may serve and file specific written objections to this recommendation within fourteen (14) days after being served with a copy.  <u>See</u> 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.

**IT IS SO ORDERED.**

Dated: June 13, 2017

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge